Good morning, your honors. Jordan Matthews for appellants Miss Angelica Limcaco. You'd like to reserve two minutes for rebuttal. Okay, we'll try to help, but clock counts down, so keep track. Understood. Thank you very much, your honor. First and foremost, this case is about Miss Angelica Limcaco, who was the initial whistleblower on Steve Wynn and Wynn Las Vegas. She had reported that her employee, Andrea, had been raped and impregnated by Steve Wynn, that Andrea had been abruptly removed and never heard from again. Miss Limcaco was threatened to remain silent and subsequently blacklisted. Appellees went through extensive efforts to conceal all of this information, and this information came to light when the Wall Street Journal reported this information in January of 2018, which led to an investigation, a one-year investigation by the Massachusetts Gaming Commission. The findings of that investigation substantiated Miss Limcaco's claims of intimidation and being suppressed and threatened to prevent from coming forward and filing suit. As soon as Steve Wynn was removed from power, Miss Limcaco promptly came forward, and the Nevada District Court erroneously dismissed her complaints at the pleading stage without a leave to amend. Miss Limcaco comes here today asking this court to reverse on three bases. We'd like to address the issues of leave to amend, recusal, and equitable estoppel. To my first point, leave to amend. Leave to amend can be evaluated and is evaluated under an abuse of discretion standard. This court should look at SEC v. Caldecott, where it states there is an abuse of discretion if there is a firm conviction of a clear error in judgment upon weighing the relevant factors. Counselor, let me interject and just ask, if you were suggested your client had some kind of contact with the defendant or, you know, or his people in some fashion, because it seemed to me that was the glaring deficiency in the original pleading, is that there was just this 10-year gap, or maybe longer, where your client had moved to a different city, had kind of reestablished herself, and had just not had no contact whatsoever, no threats, no sort of applied threats. So is there something you'd be able to add that fills that gap? Yes, Your Honor. I would cite the court to the supplemental excerpts of record, which Appellee Lynn Las Vegas provided to the court. It's page 2, so supplemental excerpts of record, page 2. That is the Clark County complaint, which is a subsequent complaint filed in state court. Paragraph 1 addresses certain of those allegations and also footnote 1, but I think it's specifically footnote 21 of that complaint goes into the fact that there's an allegation of a because James Stern, who was the former head of security for Lynn Las Vegas, was terminated for following employees. So that is an allegation that would have been added to a second amendment to address that issue. The reason that followed her, not just followed employees? Yes, there was a reasonable belief, because of the individuals involved, that it would have been connected to her, yes. Connected to her is different from precisely what I said. You would be alleging that she was followed, or that an employee of the Lynn group followed employees and she thought she might be followed? There's a reasonable belief because of the allegations that she was potentially followed. By James Stern? Yes, correct. But there's a very close connection between Ms. Lemkako and an individual such as Jon Nielsen, who was the artistic director at the time, and Ms. Lemkako knew, and also Elaine who also, he was following and was hired to follow her at that time. That is an allegation that was in, and we also have to look at the pleading standard. We have to allege facts that reasonably infer a basis for recovery. So that is an allegation that would have been added. If I could also address... Okay, before you move on, counsel, I've got a complaint in front of me. What paragraph do you think is new here that was not in your prior, in your federal complaint? Yes, Judge it would be the Supplemental Excerpts of Record, I would look to, I think it's paragraph 9 of footnote 21, and that's the... Footnote 21, okay. He spied on former employees on behalf of Steve Wynn. Does it say anything about your client? Correct. If you go to paragraph 9, it cites that, it cites footnote 21. And that addresses that allegation. Well, she, yeah, I mean you just asserted that she reasonably believed that, that they would, they would or did arrange for her to be followed. She doesn't allege any evidence that she was being followed or any suspicions that she had. I would cite the court to, I believe it's the last exhibit that was provided, which is James Stern being terminated for John Nielsen, who Ms. Simcoco knows and was the Artistic Director during that period of time and was also directly involved in this entire process, as well as Elaine Wynn. And again, we are citing this information on reasonable belief based on the information that we have, and for purposes of investigating this further in discovery. On top of all the other information... Well, is she excused from the statute of limitations if she doesn't know she's being followed? Can you clarify the question, Your Honor? Yes. If your client didn't know that Mr. Stern or any of his affiliates was following her, is she excused from filing a timely complaint? She had thought, she had filed in the initial complaint that she had a reasonable belief, this was also in the briefing, that she had a reasonable belief that she would be followed or that someone would hurt her in the Clark County complaint. So what we're saying is we had already alleged facts that inferred that she would have been followed based on the conduct that had already occurred. She hasn't alleged that she thought Mr. Stern or somebody else was following her. She hasn't alleged any facts there. It's about as general a statement as you can get. I think that there's very specific information on James Stern being hired to follow former employees. Does your client excused from the statute of limitations if she does not know that somebody is following her? I believe so under equitable assault, and that's what we had addressed because we had addressed under the Santa Maria factors. What we had to allege was active conduct above and beyond the basis of the underlying suit that was intended to make Ms. Limcocco refrain from filing suit. So the allegation there was that, which the Massachusetts Gaming Commission report substantiated, that there were active efforts to conceal Andrea and intimidate employees such as Ms. Limcocco, who was the person who had reported all of this information, and that that was active conduct intended to make her refrain, at least in part, from coming forward and filing suit. And so that would substantiate under Santa Maria the necessary requirements to invoke equitable assault with the statute of limitations. Your Honors, I would like to also address, with regards to clarifying some issues on the issue of lethal men, this court can look to Klamath Lake Pharmaceuticals, where this court held that if there is no discussion in the opinion on the basis of the denial, no written findings, then this court will reverse. Floman V. Davis from the U.S. pages 2 through 10 of the excerpts of records, that's the opinion. There is no discussion on the issue of lethal men in any way, shape, or form. And in fact, if this court looks at Eminence Capital, the holding there was very similar because the district court dismissed a first amended complaint without leave to amend, and the court held, this court held, that there was an abuse of discretion because there was a good faith propper of additional evidence. And the good faith proper of additional evidence is, again, this Massachusetts Gaming Commission reporting, and all this is different additional information. At this point, I think you're pushing on an open door. That is to say, if you were to persuade us that your client would come forward with an amended complaint that could allege facts that would excuse the late filing, I'm sure we would agree with you. So the question is not whether or not she's entitled to amend if she can allege something that will work. The question is whether she would allege something that would work. Understood, Your Honor. And what we're looking at is the Rule 8 requirements under Ashcroft. No, I know we get that. Why don't we hear from the other side, and then you'll have a chance for rebuttal. Thank you, Your Honor. Can't please the court, Debra Christensen for Wynn Las Vegas. Your Honors, I will be arguing for eight minutes, and then the other defendant, his representative, Tammy Peterson, will argue for Mr. Wynn for two minutes. Okay, let's do this. Would you set the clock for eight minutes, and then we'll reset the time. Fine, go ahead, please. Thank you, sir. To specifically address the points that you were just discussing with Plaintiff's Counsel, if you are looking for where is the evidence regarding following Ms. O'Connell. Where's the allegation? The allegation is in her state court complaint, which she filed two months after the district court's order dismissing her case in federal court, and after she had already obtained all of the Nevada and Massachusetts gaming records. And the place that she couldn't direct you to, I will give you that site. It's Supplemental Excerpts of Record, pages 378 and 379. What you will see is that it is a news article, and the heading, or the first sentence, says that the former security spied on former employees on behalf of the company's employees. Plaintiff's Counsel also brings up Mr. Nielsen. So the issue here with the quote, spying, was because in 2018 when the Wall Street Journal article was published, there was a belief that Mr. Nielsen was the source for the Wall Street Journal, and there was an allegation that he was thereafter followed. None of that information relates in any way to the plaintiff demonstrating why in 2006, when she was terminated, she did not have sufficient information that was concealed by my client from her to allow her to ascertain her claims and file within 300 days. Let me ask you a question this way, if I may. This is not a concealment case. She knew pretty much what had happened. She had a plausible ground on which to if I did go forward, I would suffer some serious adverse consequences. Right, so it's a direct threat or intimidation. If we take as true, if we take her allegation, which I think is at that moment, deficient, if an amended complaint says, I was terrified that if I were to file a formal complaint, some terrible things would happen to me. For example, this alleged rape, and she's disappeared. I'm worried I'm going to disappear. And I've got good grounds to believe that I would disappear. Would that be an excuse for late filing? I'm not saying that she's alleged that, but if she were to allege that, would that be an excuse for late filing? Under the cases that have allowed equitable estoppel to apply when there's been a fear or intimidation, that would not satisfy it. In those cases, plaintiff cites in her amended complaint to the MNO versus Magano case, where equitable estoppel was applied. It was not an employment case. However, it involved a direct threat. That was a case where a police officer threatened an individual who he did not want to speak about him. And what he told her was, I can find you at any time and your family at any time. He then told her you're going to pay if you say anything about me. Then on at least two occasions, he drove by in his patrol car, stuck his finger out the window like a gun, and mimicked shooting her. In that case, the court found that there was an actual direct threat of physical harm to her safety. That's not alleged here. As the district court pointed out, no one's threatened her. Wait a minute, we're not on the same page then. I'm asking you to assume that she had threats that were serious enough that she reasonably believed that there were going to be terrible adverse consequences. And I asked you, would that be enough? And I think you said no. But I think what you mean to say is yes. But that's not going to but but then you're going to say but that's not even even been remotely alleged. Even if that was alleged, it's still saying I have been threatened isn't enough. She has to show that there was a threat of harm that was made at the time that the statute of limitations was running back in July of 2006. For the claim. I think we're on the same page, even though you don't want to admit that we are. And if we're on the same page, you still have a very powerful argument. And that is to say, she hasn't made sufficient allegations. Well, and here's the other thing I would point out, Your Honor, in the district court looked at this, the district court looked at all of the very facts that you're talking about and consider, was there a reasonable threat that she could rely on not to have filed the statute of limitations timely. And the court points out, no one threatened to murder her, kidnap her, blacklist her, or otherwise, you know, place her in any harm. The other fact I think you need to remember is the complaint by the subordinate employee was in June of 2005. When Muslim capital first started working for the company. She wasn't terminated for another year after that, until July of 2007. So if she truly was afraid in June of 2005, that the subordinate had disappeared and possibly been murdered. The fact that she remained employed for another year, didn't call the cops, didn't take any other action belies this argument that she truly feared for her safety and the employee's safety. I see the clock is ticking down. So I do want to address one other point on leave to amend. Council cited the Klamath case and said that it is error for the district court to deny leave to amend without making affirmative findings and that you should reverse. But what council does is leave out the very next sentence of that case. It goes on to say, at the same time, feudal amendments should not be permitted. And in fact, in Klamath, this court upheld and affirmed the district court's dismissal of a complaint, because it would be feudal to amend. Now, Judge Fletcher, did I did I answer all of your questions? Yes, you did. Thank you. Thank you, Your Honor. I understand that we didn't get to the recusal issue, although plaintiff indicated that she wanted to argue that in this case, I would just point out, there is absolutely no authority in support of a district court judge having to recuse themselves simply because one of the attorneys in one of the cases before them is considered as a candidate for a magistrate judge position. There is absolutely no evidence that the district court here is in any way conflicted or has shown any bias. And what it appears is that based on the plaintiff's own statement at the end of her argument in her supplemental brief, she is simply looking to change venue to move this case to California where she believes it will be more favorable to her. This is a Nevada case. The facts happened here, the relationships were here. This is where the case is properly venue. As to the issue of estoppel, not to not to put too fine a point on it, Your to the heart of it. I think the point is the crux of this case is that she's got to demonstrate that she relied on some active actions by the defendants to prevent her from filing a complaint timely back in 2006. And she's got to explain to you then why a 12 year delay is reasonable. None of the cases that she cites for equitable estoppel get near 12 years. Even the ones dealing with molestations and abuse of Children only go for a matter of years. So there is no law or facts here on which the plaintiff can demonstrate that if she amended her complaint that she could state a plausible claim under the Iqbal Twombly standard court properly exercised its discretion and should be affirmed. Okay, thank you. Thank you, Your Honor. Now we've got two minutes. Thank you. May it please the court. My name is Tammy Peterson, and I represent the Appalachian Steve Wynn. With my limited time, I'd like to address a few issues that my colleague, Ms. Christensen, just brought up that I just want to clarify as well. The issue of whether or not an amended complaint would have fixed some of these problems with the deficiencies in the amended complaint that the district court dismissed. As my colleague mentioned, the Klamath case actually referenced, looked at an actual motion to amend that had been before the district court. In our case, there was no motion to amend. The amended complaint that was dismissed was the only thing pending before the district court. There had been no leave to file an amended complaint. What there was was a request for judicial notice of a Massachusetts Gaming Commission report. Now that Massachusetts Gaming Commission report was a document that was replete with hearsay. It actually had heavily redacted portions in it. It actually used pseudonyms throughout the report. So you don't even know what the Gaming Commission, who they were speaking to. This is not the subject of judicial notice. Judicial notice is not permitted in these capacities. A court can only take judicial notice of a public record for the fact of the public record and not for the facts contained therein. Even so, the facts that are alleged in this Gaming Commission report still do not help the appellant in this case because there is nothing that says that Mr. Wynn did anything with regards to trying to prevent Ms. Lim-Caco from filing a claim. The district court was correct when the district court said Ms. Lim-Caco did not allege she was assaulted. She did not allege she was threatened. There was actually no contact alleged between Mr. Wynn and Ms. Lim-Caco at all. In the absence of these allegations, there would be no reason to prevent Ms. Lim-Caco from filing her claim in the statute of limitations parser. I see my time is up. Thank you. Thank you. Thank you very much. Yes. Thank you very much, Robert. I'd like to address just a few points. First, on the issue of futility, if we look at page one of the Supplemental Act Certificate of Record, or rather page two, that's paragraph one and footnote one, we have to satisfy the plausibility standards, and that goes into the is the individual who reported this. Andrea immediately disappeared. The Massachusetts Gaming Report goes into extensive information and investigation in detail about efforts to conceal and intimidate. This is what substantiates at a pleading stage, if we're satisfying the act of conduct above and beyond the basis of the underlying suit, that substantiates this at the pleading stage. With regards to the issue of leave to amend and not filing a motion for leave to amend, I would cite the court to Balestrary, where the court stated that it's not necessary to file a formal motion for leave to amend in order to preserve it. And this was addressed in briefing, and we addressed the issues of leave to amend, as did Gwynne Las Vegas and Steve Gwynne. And lastly, I would briefly like to touch on the issue of recusal. There is clear authority under Harmel v. Halperin where this would be in plain miscarriage of justice not to that there's a very unusual circumstance here, where Gwynne Las Vegas' lead counsel was being vetted by the district court during the entire pendency of this case. There was no disclosure. There was apparently an application that was filed after we filed the complaint. It seems that she was selected before there was a ruling on the Gwynne Las Vegas motion to dismiss, and multiple briefs were filed by Gwynne Las Vegas' lead counsel. There was no... Counsel, what was Judge Dew's connection to the appointment of Elena Yucha? So, she is now the chief judge of... She is now the chief judge. Was she chief judge at the time? No, she was going to be assuming that role. Okay, was she located here in Las Vegas? Judge Dew? Or Judge Yucha? Judge Dew is in Las Vegas, correct? No, she's not. She's in Reno. Sorry to clarify. She's in Nevada. What I'm clarifying for the court... Right, it's a big state. Those are two different courthouses about eight hours apart. Did she have any role in the appointment of Ms. Yucha? We're not clear about that, but what I do want to clarify for the court is if we look at Milcher Berg under the U.S. Supreme Court, under the issue of recusal, if a reasonable person looking at the circumstances would find an under-substantiated recusal... Counsel, when the announcement of Ms. Yucha's pending appointment came out, you still had time and you had local counsel. Why didn't you raise it then? I discovered this issue on February 29th. Well, you discovered it, but, counsel, you had co-counsel appointed in Nevada. You're a California counsel. You had Nevada counsel. That's correct. Who were all mailed and given notice of the appointment. Why didn't you raise it then? Well, I think the only issue that is... Apparently, there was a state bar announcement that was sent out via email. There's nothing in the record that indicates that our counsel received any of this notice. I personally have no awareness whatsoever of this notice. What I can say is that this had to be evaluated under intense investigation of our own internal records. So as soon as we had determined that this was announced within one month of the dismissal of our case, we had realized that there had been a notice of appearance that was filed on April 2nd of 2019 by new counsel, Ms. Christensen. And apparently on that day, a reply brief was filed with Ms. Yucca's name that was removed. But Ms. Yucca was still ostensibly lead counsel at that time. And this is for a judge in our case. There was no disclosure about this very unusual and important fact. And then 16 days later, on April 18th, the Win Las Vegas motion to dismiss is granted without any leave to amend, even though the standard for leave to amend is when justice so requires. And we have provided all of this documentation that substantiated that we should at least be allowed to be evaluating this in discovery when these are events that on the merits actually occur. So on that basis, this court has authority under Liljeburg. There's an appearance of partiality that this court should vacate and remand in order of recusal on that basis and should also allow Ms. Lomcaco leave to amend. We can substantiate on the basis of equitable establishment under the conduct by the defendant appellees that was intended to make Ms. Lomcaco refrain from coming forward and filing suit. And it worked on that basis. We understand the arguments from both sides. Thank both sides for their arguments. Lomcaco v. Win, submitted for decision. Thank you very much. Thank you, Your Honor. Thank you, Your Honor.
judges: W.fletcher, Bybee, Watford